**LOGIN CORP. v. SOMEKH.**

No. 13371.

United States Court of Appeals
Ninth Circuit.

June 18, 1954.

Freed, Gebauer & Freed, Eli Freed, Scott Fleming, San Francisco, Cal., for appellant.

Richard S. Bishop, Hadsell, Murman & Bishop, San Francisco, Cal., for appellee.

Before HEALY, ORR and LEMMON, Circuit Judges.

ORR, Circuit Judge.

In June, 1949, appellant The Login Corporation, an American import-export firm, engaged the brokerage services of

---

appellee Somekh, a citizen and resident of Tel Aviv, Israel, for the purpose of effecting a sale of sesame seed between appellant as seller and Palestine Oil Crushers Pool, Ltd., hereafter Oil Crushers, as buyer. After considerable negotiation, the parties, on or about July 14, 1949, entered into a contract whereby appellant agreed to deliver 2,000 long tons of sesame seed to Oil Crushers at Haifa, Israel, at $202 per long ton, or a total purchase price of $404,000. The sale was conditioned upon the buyer's establishment of a satisfactory letter of credit. It was understood that appellant would pay appellee a commission of one per cent of the gross contract price, or $4,040, for his services in connection with the sale.

On August 3, 1949, appellant received a letter of credit from Oil Crushers which it considered unsatisfactory. After appropriate amendments were made, appellant accepted the letter of credit. By its terms appellant was required to put up a deposit of three per cent of the purchase price as security for its faithful performance of the contract. Appellant made arrangements for a partial shipment of 800 tons of sesame seed and on September 2, 1949, put up a proportionate deposit of $4,848 as security. The remaining amount of the required security was deposited on September 12, 1949.

Storms, floods and crop failures caused an acute shortage of sesame seed and appellant was able to obtain and ship but 240 tons. This occurred early in September, 1949. Payment for the seed actually shipped was obtained by partially negotiating the letter of credit. Thereafter, on October 12, 1949, appellant paid appellee $456.40 representing his one per cent commission on the partial shipment.

Appellant encountered further difficulties in procuring sesame seed. As a result thereof, on November 14, 1949, appellant and Oil Crushers, by mutual agreement, canceled the contract of sale. Under the terms of the cancellation agreement, Oil Crushers obtained a release of its letter of credit and retained $2,500 of the good faith deposit as compensation for costs and expenses incurred in connection with the transaction.

Appellee Somekh demanded one per cent of the purchase price on the balance of the undelivered sesame seed as commission due him, claiming that he had fully performed his services as a broker. Appellant refused payment, contending that appellee was entitled to a commission on the seed actually shipped and paid for by negotiation of the letter of credit and not otherwise. These proceedings were resorted to by appellee in order to enforce his claim. The trial court sustained his version of the contract. It found that appellee had fully performed and had earned a commission on the full amount of the purchase price when he found a ready, able and willing buyer and had furnished a satisfactory letter of credit. Appellant concedes that the trial court's conclusion would be correct absent an express agreement to the contrary, and argues that an express agreement to the contrary did exist. Appellant relies upon three letters which it maintains disclose an express agreement that appellee was to be paid his commission upon consummation of the sale.

On July 28, 1949, appellee wrote appellant as follows:

"* * *

"After abundant sweating we secured the opening of a L/C [letter of credit] and that practically brings our task to its normal end. Already in that stage we are deemed to have earned our commission. As a matter of usage, we are prepared to wait until you negotiate the L/C, but no longer. This is a question of principle; practically, we have no objection to leaving funds with you when we are permitted to do so, but we request you to send us our Credit Note in time."

* * *

A fair interpretation of the language used sustains the conclusion that appellee considered the full amount of his

commission to be earned when he secured a satisfactory letter of credit. This July 28, 1949, letter does no more than inform appellant that although the commission is due and owing when the letter of credit is opened, appellee was willing to wait for payment until appellant negotiated the letter of credit. It does not, as argued by appellant, constitute a new and independent offer on the part of appellee that his commission be considered as earned when the seed is shipped and payment received.

On September 7, 1949, some five days after appellant accepted the letter of credit and appellee had fully performed all that he had agreed to do, appellant answered appellee's letter of July 28th as follows:

"Gentlemen:

"Upon my return from the Hawaiian Islands I find various letters from you regarding commissions and difficulties on Sesame Seed.

"With reference to commissions, you are right. Your commissions are due and payable as soon as we negotiate the letter of credit, and the landed weights have nothing to do with you. In the future your commissions will be remitted during the same month that the letter of credit is negotiated." * * *

This letter of September 7th is equivocal. The first sentence of the second paragraph indicates that appellant agrees with appellee's statement in the July 28th letter that his commission is earned when the letter of credit is opened. The second sentence in the same paragraph, however, suggests that the commission is not earned until the seed is shipped and payment is made.

Appellee was compelled to place an interpretation upon appellant's ambiguous September 7th communication. That appellee interpreted the letter as confirming his understanding of the agreement is clear from his reply mailed on September 19, 1949:

"We have just received your letter of September 7 and we note with thanks that your views about commissions are identical with ours. * * *".

Appellee's interpretation was a reasonable one and is thus binding upon appellant. Doubts arising from appellant's ambiguous language must be resolved against it. Restatement, Contracts, § 236(d) (1932).

We conclude that appellee had earned his commission by September 2, 1949, having on that date fully performed the agreed services, and the subsequent ambiguous communications did not thereafter affect his right to the commission.

Judgment affirmed.